**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VIVIAN ALEID,

                Plaintiff,

vs.                                               Case No. 3:17-cv-1236-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Vivian Aleid ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of lung damage from an endoscopy, damaged sacroiliac joints, and chronic back pain. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed February 14, 2018, at 83, 95, 109, 120, 230. Plaintiff filed an application for DIB on December 31, 2014,[2] alleging an onset disability date of August 27, 2014. Tr. at 205. Thereafter, the alleged onset disability date was apparently amended to September 27,

---

     [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed February 14, 2018; Reference Order (Doc. No. 16), entered February 15, 2018.

     [2] Although actually completed on December 31, 2014, see Tr. at 205, the protective filing date of the application is listed elsewhere in the administrative transcript as December 30, 2014, see, e.g., Tr. at 83, 109.

2014. See Tr. at 83-84, 109. Plaintiff filed an application for SSI on January 5, 2015,[3] alleging an onset disability date of September 27, 2014. Tr. at 207. The applications were denied initially, Tr. at 83-94, 107, 135, 136-38 (DIB); Tr. at 95-106, 108, 139-41, 169 (SSI), and upon reconsideration, Tr. at 109-19, 131, 144-48, 168 (DIB); Tr. at 120-30, 132, 149, 150-54 (SSI).

On October 4, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 29-82. Plaintiff was forty-seven years old at the time of the hearing. See Tr. at 39. The ALJ issued a Decision on November 15, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-23.

On September 12, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On November 3, 2017, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) the ALJ erred in his evaluation of the Mental Residual Functional Capacity ("RFC") Assessment, completed by Plaintiff's treating psychologist, John Byron, Jr., Psy.D; and 2) "the ALJ's step 4 finding is contrary to law because he failed to account for his own finding regarding Plaintiff's limitations in concentration, persistence or pace and social functioning." Plaintiff's Memorandum - Social Security (Doc. No. 18; "Pl.'s Mem."), filed April 16, 2018, at 4 (emphasis omitted); see Pl.'s Mem. at 4-19 (first argument), 19-24 (second argument). On June 13, 2018, Defendant filed

---

[3] Although actually completed on January 5, 2015, see Tr. at 207, the protective filing date of the application is listed elsewhere in the administrative transcript as December 30, 2014, see, e.g., Tr. at 95, 120.

-2-

a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings because the ALJ erred in considering Dr. Byron's Mental RFC Assessment.

On remand, a proper evaluation of Dr. Byron's Mental RFC Assessment (Plaintiff's first argument) may impact the ALJ's step four finding (Plaintiff's second argument). For this reason, the Court need not address Plaintiff's second argument. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through step four, where the inquiry ended based on the ALJ's finding at that step. See Tr. at 15-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 27, 2014, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the adrenal glands." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). She can occasionally lift and carry 20 pounds, and she can frequently lift and carry 10 pounds. She can sit, stand and walk for six hours each out of an eight-hour workday, with normal breaks. She can push and pull within her exertional limitations. She must avoid concentrated exposure to fumes, odors, dusts and gases and poor ventilation. She must avoid concentrated exposure to hazards (work at heights, driving, and dangerous or moving machinery).

Tr. at 17 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as": "Secretary" and "Make-up Artist." Tr. at 22 (emphasis omitted). The ALJ did not make an alternative finding regarding the fifth step. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 27, 2014, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

-4-

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

The undersigned addresses Plaintiff's argument regarding the ALJ's evaluation of Dr. Byron's Mental RFC Assessment. As noted above, Plaintiff's second argument is not addressed.

**A. Parties' Arguments**

Plaintiff contends that "[t]he ALJ failed to give 'good/specific/supported' reasons for rejecting Dr. Byron's opinion." Pl.'s Mem. at 9 (emphasis omitted). Plaintiff argues that contrary to the ALJ's finding in discrediting Dr. Byron's opinion, "Dr. Byron's treatment notes

contain ample evidence that is not inconsistent with his Mental [RFC] Assessment . . . ." Id. at 16. Plaintiff asserts that "[t]o the extent that the ALJ also rejected Dr. Byron's opinion because Plaintiff applied for a job at Nordstrom and purportedly 'Dr. Byron did not discourage [Plaintiff] from seeking work,' the simple fact is that nowhere in Dr. Byron's treatment notes is it documented whether he encouraged or discouraged Plaintiff from working." Id. at 18 (citations omitted)

Responding, Defendant argues that Dr. Byron's description of Plaintiff's "intellectual ability as above average, her insight as fair, her judgment as good, and her thought process/content as 'normal' . . . are generally inconsistent with Dr. Byron's opinion[s]" in the Mental RFC Assessment. Def.'s Mem. at 6. Defendant contends that "[t]he ALJ properly noted that Plaintiff informed Dr. Byron she was looking for a job and that he did not discourage her from seeking work, which is generally inconsistent with his opinion regarding her mental limitations." Id. at 7-8.

## B. Applicable Law

The Regulations[5] establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claims, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychologist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychologist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychologist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[7] A treating physician or psychologist is a physician or psychologist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychologist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**C. Dr. Byron's Opinion/ALJ's Decision/Analysis**

Dr. Byron began treating Plaintiff on June 1, 2016. See Tr. at 1178-81 (intake note). The administrative transcript contains six treatment notes from Dr. Byron: two from June 2016 and four from August 2016. See Tr. at 1178-81, 1185-86, 1192-93, 1197-1202.

On June 1, 2016, Plaintiff told Dr. Byron the following. She was in a medically-induced coma for eighteen days. Tr. at 1178.[8] During the coma, Plaintiff had a dream in which her mother and brother tried to kill her. Tr. at 1178. Plaintiff stated she "cannot sit outside now, on a nice day, because it will remind her of the dream." Tr. at 1178 (capitalization omitted). Plaintiff lives with her parents, but she has issues with them as she does not trust them. Tr. at 1178. She is "not feeling she can work," and she "do[es] not have the energy to work[ or] talk to people." Tr. at 1178 (capitalization omitted). She "get[s] angry in a second." Tr. at 1178 (capitalization omitted). She thinks that if she goes back to work she "would fight w[ith] people." Tr. at 1178 (capitalization omitted). She has problems with her memory and has no energy. Tr. at 1178. She sometimes forgets what happened earlier in the day. Tr. at 1178. She avoids her friends and does not want to go anywhere. Tr. at 1178. According to Plaintiff,

---

[8] Upon review of the administrative transcript, it appears the coma occurred in 2014 as a result of complications after a colonoscopy. See Tr. at 327, 418.

she "was not like this before." Tr. at 1178 (capitalization omitted). She "used to be more social w[ith] people." Tr. at 1178 (capitalization omitted).

Treatment notes from August 4, 2016 indicate Plaintiff applied for a cosmetic aesthetician job at Nordstrom. Tr. at 1192. At an August 16, 2016 appointment, Plaintiff stated she was having "some very bad dreams again, as she had while in a coma." Tr. at 1199 (capitalization omitted). According to the treatment notes, every morning she wakes up in a "good mood" and "full of energy," but then her "mood goes down" and "then energy level goes down." Tr. at 1199 (capitalization omitted).

On October 5, 2016, Dr. Byron completed a Mental RFC Assessment. See Tr. at 1211-14. Dr. Byron opined that Plaintiff has marked limitations in all activities related to understanding and memory; and marked limitations in most activities related to sustained concentration and persistence, social interactions, and adaptation. See Tr. at 1211-12. Dr. Byron explained the opined limitations as follows:

> [Plaintiff] has suffered catastrophic injuries, secondary to a hospitalization in November of 2014 – she now has significant physical and psychological limitations. Cognitively, her capacity has changed. Symptoms of the above issues are as follows: impaired memory; impaired concentration; depressed mood; high anxiety; significant insomnia; decreased endurance; decreased energy level; increased irritability; [and] significant pain.

Tr. at 1214.

In discussing the medical evidence, the ALJ summarized Dr. Byron's treatment notes. See Tr. at 19. The ALJ gave "[n]o weight" to Dr. Byron's Mental RFC Assessment on the ground that "it is inconsistent with Dr. Byron's treatment notes, which show mostly normal mental status exams." Tr. at 21. The ALJ then noted that Plaintiff "told Dr. Byron that she had applied for work at Nordstrom[, and] Dr. Bryon [sic] did not discourage [Plaintiff] from seeking work." Tr. at 21 (citation omitted).

The ALJ erred in addressing Dr. Byron's medical opinions. The ALJ did not explain with the requisite specificity the reasons for wholly discounting Dr. Byron's opinions in the Mental RFC Assessment. Indeed, the ALJ merely recited one recognized "good cause" reason for discounting these opinions, without any corresponding explanation. In summarizing Dr. Byron's treatment notes, the only "normal" findings the ALJ cited were that Plaintiff "was appropriately dressed and groomed," that she was "cooperative," that her pain medication "relieved her pain and gave her more energy," and that "she could make her appointments, take a shower and help her mother." Tr. at 19 (citation omitted). The ALJ did not explain how these findings are inconsistent with Dr. Byron's opinions, and it would be improper for the Court to draw its own conclusions and decipher whatever inconsistencies the ALJ may have perceived in the summary of Dr. Byron's treatment notes. See Rosario v. Comm'r of Soc. Sec., 877 F. Supp. 2d 1254, 1266 (M.D. Fla. 2012) (recognizing that "conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion" and that "it would be improper for the [c]ourt to draw its own conclusions from the ALJ's summary of the medical evidence"); see also Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective

findings,'" but did not provide any explanation for the reason) (quoting ALJ's decision)). Without the ALJ clearly articulating an explanation for discounting these opinions, judicial review is frustrated because the Court cannot determine whether the ALJ's conclusion that Dr. Byron's treatment notes are inconsistent with the doctor's opined limitations is rational and supported by substantial evidence.

Moreover, the Court's independent review of the record shows that Dr. Byron's treatment notes do not support the ALJ's finding that they "show mostly normal mental status exams." Tr. at 21. Dr. Byron's mental status exam findings describe that Plaintiff's behavior as "guarded, suspicious, fidgeting." Tr. at 1180. Her affect was "normal/appropriate, constricted." Tr. at 1180. Her mood was described as "depressed, hopeless[ ], helpless, feeling of guilt, withdrawn, anxious, appropriate." Tr. at 1180. With regard to anxiety, Dr. Byron found the following: "[E]xcessive worry, restless or keyed up, easily fatigued, difficulty concentrating, irritability." Tr. at 1180. Plaintiff wakes up in the night at least three times for thirty to sixty minutes, and she gets four to five hours of sleep per night. Tr. at 1180. She recently lost ten pounds. Tr. at 1180. As to memory, Plaintiff could not recall what happened the day before. Tr. at 1180. It was noted that she experienced suicidal ideations the month prior to the June 1, 2016 visit; specifically, she wished to be dead. Tr. at 1180. She thinks it was "bad luck" that she survived her "ordeal" (presumably the 2014 colonoscopy complications and coma). Tr. at 1181 (capitalization omitted). The treatment notes list the following as "[s]trengths: social support; family support; compliant with treatment; motivated; intelligent; educated." Tr. at 1181. It notes that the following are "[w]eaknesses: poor interpersonal functioning; legal issues; health problems; cognitive limitations; financial issues; chronic stress; chronic pain; unemployment." Tr. at 1181.

-12-

In light of the foregoing, the ALJ's sole remaining reason for discounting Dr. Byron's opinion—that Plaintiff sought work at Nordstrom—is insufficient for this Court to find that substantial evidence supports the ALJ's Decision. Moreover, as Plaintiff points out, Dr. Byron's treatment notes do not indicate whether he discouraged Plaintiff from applying to jobs. See Pl.'s Mem. at 18.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reconsider the opinions of Dr. John Byron, Jr., assign the appropriate weight to such opinions, and explain the reasoning behind the weight assigned;

   (B) If appropriate, reevaluate at step four Plaintiff's limitations in concentration, persistence or pace, and social functioning; and

   (C) Take such other action as may be necessary to resolve this claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 18, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record